UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:11CR263 RWS |
| JAMES L. MILLINER, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was re-referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed motions to suppress, including a motion to suppress interception of wire and electronic communications evidence. The undersigned held an evidentiary hearing on Defendant's motions on May 6, 2013, and ordered a transcript of the proceedings. After the transcript was filed on May 8, 2013, the attorney for the United States filed a post-hearing brief on May 22, 2013, and the Defendant filed a brief in reply on June 13, 2013.

Based upon the evidence adduced at the hearing on the motions to suppress, as well as a review of the transcript of the hearing in this matter and the briefs of the parties, the undersigned makes the following findings of fact and conclusions of law as to the motion to suppress contents of any and all electronic surveillance:

**Court Authorized Title III Wiretaps**:

Based upon the following facts, the undersigned concludes that the evidence obtained from the wiretaps in the case now at bar were lawfully obtained and should not be suppressed. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. § 2510, et seq.,

and its progeny provide for the interception of wire, oral, and electronic communication under certain circumstances. Under these circumstances, an order for electronic surveillance may be entered by a United States District Judge upon application of a federal law enforcement officer who has been authorized to make such an application by the United States Attorney General or his designee. An authorization for such application is presumed to be valid, unless the person challenging the application makes a prima facie showing that it was not so authorized. See United States v. O'Connell, 841 F.2d 1408, 1416 (8th Cir. 1988). In the case now at bar, included in the application for a wiretap before the District Court is a letter from the Deputy Attorney General of the United States authorizing the wiretap to be filed. Thus, the wiretap was lawfully authorized.

The application itself must include a full and complete description of the facts relied on, including details of the alleged offense; the description of the facilities where the communications are to be intercepted; a description of the communication sought to be intercepted; the identity of persons known whose communications will be intercepted; whether or not other investigative procedures had been tried and failed, and the period of time for which interception is requested. The application must also include whether previous applications involving the same facilities, persons, or places have been made. See 18 U.S.C. § 2518(1). The applications here contain each of the statutorily required materials. Thus, the application itself conforms in all respects to what is required by the statute.

Under § 2518(3), the court may issue an order only if it finds probable cause to believe that: 1) a person is committing one of the crimes enumerated in 18 U.S.C. § 2516; 2) the communications concerning such offense will be obtained through the interception, and 3) the place where the communications are to be intercepted is being used in connection with the commission of such offense. A review of the evidence reveals that probable cause has been shown for each of the above

three items on all of the applications for interception of communications on target telephone Nos. 1 through 5. Probable cause required for a wiretap "does not differ from that required by the Fourth Amendment for a search warrant." United States v. Macklin, 902 F.2d 1320, 1324 (8th Cir. 1990). See United States v. Leisure, 844 F.2d 1347, 1354 (8th Cir. 1988). As stated in Macklin, supra,

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for. . . conclud[ing]" that the probable cause existed.

Macklin, 902 F.2d at 1324.

As is the case in other search warrant affidavits, the Supreme Court has stated:

In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1949).

Further, probable cause in an affidavit, "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Illinois v. Gates, 462 U.S. 213, 232. (1983).

It is also clear that information from a reliable informant, without more, may provide probable cause for the issuance of a search warrant. See United States v. Pressley, 978 F.2d 1026 (8th Cir. 1992). In addition, even an anonymous tip from a crime stopper's hotline or an informant whose reliability has not been tested is sufficient information upon which to create probable cause, as long as there is adequate corroboration of even innocent details. See United States v. Briley, 726 F.2d 1301 (8th Cir. 1984).

A. The Wiretaps Authorized in the Case Now at Bar

Beginning in November, 2010, Agent Lawyer of the St. Louis Office of the Drug Enforcement Administration filed an affidavit before a United States District Judge of the Eastern District of Missouri requesting permission to intercept conversations from target telephone Nos. 1 and 2, which were detailed in the affidavit. Later in December, separate applications were filed to intercept the communications on target telephone Nos. 4 and 5, since it was discovered that target telephone No. 1 had been discontinued in drug dealing, and that drug transactions had been transferred to target telephone No. 4. As to probable cause for the wiretap, multiple sources of information and confidential informants told DEA agents that a drug operation known as the McRoberts' drug operation was a large drug-trafficking operation that existed in the Wright City, Missouri area. Members of the organization included Charles McRoberts, who was alleged to be its head and who supplied cocaine to sales people; Halesha Bradshaw, who the agents, through informants and other investigative techniques, believed was selling drugs for McRoberts in the Wright City area; a person named "Rogers," who was also selling drugs for McRoberts before he was sentenced to jail in late 2010; Christopher Dwight Adams, an individual who took over for Bradshaw in the role of distributor of cocaine to purchasers in the Wright City area while working for McRoberts, and James Lee Milliner who is a crack distributor for McRoberts in the Northridge Apartments in Wright City, Missouri. The affidavit details the fact that numerous confidential sources and sources of information told agents that they had to call target telephone No. 1 to set up drug purchases from the McRoberts' organization. Shortly before the first wiretap application was signed, a source of information for DEA called and talked to Rogers and Halesha on target telephone No. 1. The source set up a controlled drug purchase from Rogers and Bradshaw at an area called the "Pavilion" in Wright City,

4

Missouri. The source of information was supplied money, and observed by DEA agents going to a pavilion, where he was observed to exchange money in return for a package. The informant was met by DEA after the package was given to him, and it was discovered to include cocaine. Both a body recording and the informant debriefing by DEA revealed that the cocaine had been sold to him by Rogers or Bradshaw at the Pavilion. It was the informant's information that McRoberts never touched the cocaine when it was sold to third parties even though he was the source. The agents were able to set up multiple transactions with Rogers and Halesha Bradshaw. Several controlled purchases were set up or negotiated on target telephone No. 1. The agents also conducted surveillance of the location called the "Pavilion," and observed that McRoberts would show up on numerous occasions to allegedly re-supply Rogers or Halesha Bradshaw who were selling narcotics to third parties at the Pavilion. The agents also reviewed toll records on target telephone Nos. 1 and 2, and they revealed that numerous contacts were made on the target telephones by the co-conspirators. Based on the above, the United States District Judge issued an order authorizing the wiretap of target telephone No. 1.

Based on the above, the undersigned concludes that there was ample probable cause for the issuance of this warrant. Sources of information directly talked to members of the organization on target telephone No. 1, including McRoberts, Rogers, and Halesha Bradshaw in order to set up drug transactions which were then observed by the agents. In addition, surveillance revealed that Milliner, McRoberts, Rogers, and Bradshaw were all present at the Pavilion, and involved in drug sales according to reliable information from informants. In addition, the toll records revealed that the target telephones were being used to contact co-conspirators and also corroborated the information

5

of the informants. Based on the above, there was ample probable cause to believe that the target telephones were being used in furtherance of the drug trafficking.

The undersigned also concludes that there is ample probable cause for the extension of the wiretap to target telephone No. 4. Monitoring of target telephone No. 1 revealed that when Halesha Bradshaw decided she would stop dealing drugs for McRoberts, McRoberts and Adams, using target telephone No. 1, contacted their purchasers using target telephone No. 1, and told them that they would now be conducting drug business on target telephone No. 4. Shortly before the wiretap was authorized on target telephone No. 4, a confidential source called Adams on target telephone No. 4, and set up a purchase of cocaine from him. Thus, the undersigned concludes there was ample probable cause for the signing of the wiretap order to listen in on phone conversations from target telephone No. 4.

B. Necessity

Federal wiretap law, 18 U.S.C. § 2518(1)(c), provides that an application for an order authorizing a wiretap must include, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed, or why they reasonably appear to be unlikely to succeed if tried, or to be too dangerous." The undersigned concludes that the affidavit of the agents shows necessity with adequate specificity, and because alleged "boiler plate" language has been held sufficient to show necessity in the Eighth Circuit. In the case of United States v. Milton, 153 F.3d 891 (8th Cir. 1998), a wiretap case in which the defendant alleged that the affidavit did not sufficiently detail necessity, the Court stated as follows in upholding the language in the affidavit:

> The affidavit describes traditional techniques and explains why these techniques do not normally prove successful when targeting drug conspiracies. Most of the

6

> assertions would be true in any drug investigation. The reasons given include witnesses' fear in answering questions and the propensity of individuals to plead the Fifth; the fact that normal surveillance only exposes meetings between individuals, leaving agents to guess at the purpose of the meetings; the residential nature of the neighborhood precludes agents from remaining near the suspicious residence; and that phone records only reveal that conversations between individuals took place but do not reveal the nature of the conversations. The only reason given that was specific to this particular investigation was that the suspects kept the trash container for the residence on the front porch, making it impossible for the agents to search the garbage.
>
> Although some of these assertions might appear boilerplate, the fact that drug investigations suffer from common investigatory problems does not make these problems less vexing. Drug crime is necessarily harder to detect than other crimes because it is difficult to witness and does not create victims who are compelled to come forward and report the crime. Furthermore, agents preparing the affidavits supporting applications for electronic surveillance are not required to exhaust "all possible investigative techniques" before a court can issue an order authorizing interception of communications. U.S. v. Falls, 34 F.3d 674, 682 (8th Cir. 1994).The necessity prong of 2518 (3)(c), is a finding of fact subject to a clearly erroneous standard of review. We find no err in the district court's refusal to suppress the wiretap based on a lack of necessity.

153 F.3d 891, 895, 896 (8th Cir. 1998).

Initially, the undersigned notes, as stated above, that the necessity requirement is determined relative to the scope of the investigation. Since a large drug conspiracy may be more difficult to fully prosecute without a wiretap, the scope of the investigation must be considered in determining necessity for the wiretap. See United States v. Jackson, 345 F.3d 638 (8th Cir. 2003); United States v. Smith, 909 F.2d 1164, 1166 (1990). In the case now at bar, the scope of the investigation is quite broad. The agent states the scope of the investigation in the affidavit and application as follows:

> 1. The nature, extent, and methods of operation of the illegal drug-trafficking business of the target interceptees and others known and unknown;
>
> 2. The identities and roles of principles, accomplices, aiders and abettors, co-conspirators and participants in these persons' above described illegal activities;

7

3. The distribution, concealment, and transfer of the contraband and money involved in those activities;

4. The existence and location of records pertaining to those activities;

5. The location and sources of resources used to finance those illegal activities;

6. The location and disposition of the proceeds of those activities, and

7. The location of items used in the furtherance of those activities.

The Defendant seems to argue that there was no probable cause contained in the Government's affidavits because the facilities were not being used to contact McRoberts' sources of supply, but only to sell drugs. The Defendant's argument does not address what is required of the affidavit requesting permission to listen to calls over a telephone. The affidavit must show that one or more of the target subjects was committing at least one of the target offenses with the identified cellular telephone. It was not necessary to link all of the listed target subjects to the telephone. The District Court, in reviewing each of the affidavits, had more than sufficient probable cause to determine that one or more of the target telephones, including target telephone No. 1 and target telephone No. 4, were being used to facilitate the distribution of crack cocaine. United States v. Fairchild, 189 F.3d 769 (8th Cir. 1999). This was more than sufficient particularly given the broad nature of the scope of the investigation stated above.

Further, specific examples were given of investigative techniques that have been used to attempt to obtain the evidence to show the full scope of the conspiracy, including the sources of McRoberts' drugs, as well as an indication as to how those techniques have failed to reveal the full scope of the conspiracy. For example, sources of information have told the agents that McRoberts, Milliner, and others conduct extensive counter-surveillance to make sure the police are not watching them. They carry firearms to protect their operation. They also are alleged to have local police on

their payroll. At least one informant told agents that McRoberts pays $10,000 per month in bribes to police officers to determine when and how he is being investigated or surveilled. In addition, the agents have observed McRoberts using multiple vehicles in this case, and allowing multiple persons to use his vehicles. Thus, surveillance of these vehicles would not reveal that McRoberts was present in them, and the use of GPS devices would not be able to narrow down which vehicle McRoberts was using. In addition, when sales were being conducted at the "Pavilion," McRoberts and others were known to be conducting counter-surveillance in the woods from that location, including using night-vision goggles. The McRoberts' organization is also a very close-knit group, and involves mainly McRoberts' relatives. McRoberts does not talk to outsiders on a one-on-one basis, but instead deals with close associates via the telephone. During the lawful wiretap of target telephones, McRoberts is heard to recruit an individual named Adams to eventually sell narcotics and to switch the cellular telephone from target telephone No. 1 to target telephone No. 4, and only use this cellular telephone to deal with customers. Thus, the use of informants to obtain entry into the group is highly unlikely because of its tight nature. In addition, surveillance is difficult not only because of the counter-surveillance but because McRoberts is careful. As stated above, he switches telephones and has moved his base of sales operation from the Pavilion to the Northridge Apartments. The Northridge Apartments are in a residential neighborhood in which many of McRoberts' associates live, and any outsiders conducting a surveillance or approaching the apartments without permission would draw suspicion. For the above reasons, use of informants or undercover agents as well as surveillance is likely not to be fruitful in furtherance of this investigation. Likewise, because of the tight woven nature of the individuals, interviews with target witnesses or use of the grand jury would likely not be successful and would only alert the targets that they are being investigated. As an example, when

Halesha Bradshaw quit working for the drug operation, an attempt was made to gain her cooperation, but she refused to do so. Further, the use of search warrants was attempted early on in the investigation, however, they did not lead up the chain to leaders of the organization. Rather, individual cases were made on individual members of the conspiracy, but they were uncooperative. It has been difficult, if not impossible, to obtain probable cause for search warrants on McRoberts himself, and his source of supply and "stash" houses were not known at the time of the wiretap application, and would likely not be known without the use of wiretaps. In addition, trash seizures have been attempted, however, these would lead only to search warrants which proved to be non-fruitful. Other techniques have also been tried, but were not successful as stated above. Thus, the undersigned concludes that necessity is amply shown by the affidavit.

### C. Minimization

Additionally, Title III includes certain post-authorization duties, including objectively reasonable efforts to minimize any unauthorized interceptions. 18 U.S.C. § 2518(5); see United States v. Smith, 909 F.2d 1167. Further, the Court in United States v. Macklin, 902 F.2d 1320 (8th Cir. 1990) stated as follows regarding minimization:

> In considering whether the government's conduct was reasonable, a reviewing court must consider a variety of factors, including the scope of the enterprise, the agent's reasonable expectation of the content of a call, the extent of judicial supervision, length and origin of a call, and use of coded or ambiguous language. . . More extensive wiretapping is reasonable when the investigation focuses on determining the scope of a widespread conspiracy. . . The same is true when conversations are in the jargon of the drug trade. . .Thus, the government's conduct could be reasonable even if the total number of conversations intercepted contained a high percentage of nonpertinent calls.

United States v. Macklin, 902 F.2d at 1328.

In the case now at bar, according to the agent's affidavit, the agents were provided with detailed written and oral instructions as to the proper minimization procedures. Each monitoring agent was to read the procedure and sign a statement that the monitoring agent had understood the minimization procedures. In addition, the agents were closely supervised by the case agent in this matter. Thus, the agents were properly instructed as to the minimizing procedures. In addition, as can be seen from the affidavits in this matter, much of the conversations of the wiretaps is done in code of the drug trade and jargon, and the conversations were very short--most being less than one minute in duration. Therefore, absent a more specific complaint, the undersigned concludes that the agents complied with the minimization requirement of the statute, and that their minimization was objectively reasonable. See United States v. Homick, 964 F.2d 899, 903 (9th Cir. 1992); United States v. Ozar, 50 F.3d 1440, 1447-48 (8th Cir. 1995). Therefore, the undersigned concludes that the minimization procedures were proper, and the monitoring of the court-authorized wiretaps was reasonable.

## Conclusion

Therefore, based on the above, the Defendant's Motion to Suppress Interception of Wire and Electronic Communications Evidence should be denied.

* * *

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Interception of Wire and Electronic Communications Evidence [ECF No. 537] be **denied**.

Further, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Finally, a separate Memorandum and Recommendation as to the Defendant's motion to suppress evidence obtained from the search and seizure of his home is forthcoming from the undersigned.

          /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  28th  day of June, 2013.